[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13067
Non-Argument Calendar

_____

D.C. Docket No. 2:17-cr-00129-LSC-TFM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL LOWE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(March 26, 2019)

Before WILSON, JILL PRYOR, and FAY, Circuit Judges.

PER CURIAM:

Michael Lowe was convicted of one count of sex trafficking a child under 18 U.S.C. §§ 1591(a)(1), (b)(2), and (c) (Count 1), and one count of conspiracy to do the same under 18 U.S.C. § 1594(c) (Count 2).  Lowe now appeals his 220-month sentence.  Lowe argues that the district court incorrectly sentenced him by finding that he knew or should have known that M.H. was a vulnerable victim.  After review, we affirm.

I.

A federal grand jury indicted Lowe on Counts 1 and 2.  Lowe pleaded not guilty and proceeded to trial.  At trial, M.H.—the victim—testified that she had known Lowe for two years.  She met Lowe while she was using meth and living at the house of another drug addict.  Though M.H. was not living with her family at this time, Lowe knew of M.H.'s siblings and knew about her mother.[1]  M.H. had a sexual relationship with Lowe, used drugs with him, and stayed with him on the street after leaving the house where they met.

M.H. also testified that she met Joshua Rose through Lowe.  On the day that they met, Rose asked M.H. to have sex with another man—a "client"—for money.  Rose urged M.H. to do it so that he would have money to pay for the hotel room that they would all share, and so that he could get his girlfriend, K.G., out of jail.

---

[1] According to uncontested facts in the Presentence Investigation Report (PSI), M.H.'s mother was a drug addict who was in and out of jail.

2

M.H. agreed to have sex with the client.  After this initial agreement, M.H. had sex with various other clients.  M.H. gave the money that she made from prostituting to Rose, who used it to buy drugs for himself, M.H, and Lowe.  Eventually, however, M.H. decided that she did not want to see clients anymore.  She argued with Lowe and Rose about her decision, and ultimately left the hotel with Lowe.

Testimony from both Rose and M.H. established that Lowe knew of, and participated in, M.H.'s prostitution.  Lowe was in the room as Rose took pictures of M.H. to create an advertisement for her services on Backpage.  The ad stated that M.H. was 18 years old, but Lowe knew that M.H. was 17 years old.  When M.H. met clients in the hotel room, Rose and Lowe would sit outside of the room in Lowe's car.  Lowe was the only member of the group who possessed a car, and at one point used it to drive M.H. to meet a client at another hotel.

Based on the information in the Presentence Investigation Report (PSI), a probation officer assigned Lowe a base offense level of 30 under U.S.S.G. § 2G1.3(a)(2).  In addition to various other enhancements and adjustments, the probation officer added a victim-related upward adjustment of two levels under § 3A1.1(b)(1) because Lowe knew or should have known that M.H. was a vulnerable victim.  Lowe's total adjusted offense level was 40.  He had a criminal history score of 4, so the probation officer assigned him a criminal history category

3

of III.  Based on these results, the officer calculated Lowe's guideline imprisonment range to be 360 months to life.

In a sentencing memorandum, Lowe objected to the PSI, arguing that the two-level vulnerable victim enhancement should not have applied.  Lowe argued that M.H. was not unusually vulnerable due to her age, physical or mental condition.  Moreover, Lowe asserted that M.H. made the conscious decisions to live with a drug addict, to use drugs, and to prostitute.  Both Lowe and M.H., who used drugs together, came from dysfunctional homes with mothers who were drug addicts.  Lowe argued that he did not market M.H. or prey on any vulnerability of M.H, and her status as a minor was already taken into consideration in the crime itself.  Therefore, Lowe argued, applying the enhancement constituted double counting.

At sentencing, Lowe reiterated his objection to the two-level vulnerable victim enhancement under U.S.S.G. § 3A1.1(b)(1).  He reiterated that M.H.'s age was already taken into consideration as part of the crime and therefore should not be the basis of the vulnerable victim enhancement.  The government responded that M.H.'s age was not the reason why she was a vulnerable victim; M.H. was vulnerable because she was a runaway, had no parental supervision, her mother was a drug addict and was not involved in her life, and the victim herself was a

4

drug addict with no income and no vehicle.  The government argued that M.H. depended on Lowe for her needs.  The court overruled Lowe's objection.

The court stated that Lowe's conduct was not at the level of Rose's conduct, and therefore ordered probation to decrease Lowe's offense level by two levels under U.S.S.G. § 3B1.2(b).  The court found that Lowe's guideline offense level was 38, his criminal history category was III, and the guideline imprisonment range was 292 to 360 months.  The court sentenced Lowe to 220 months' imprisonment, finding this amount of time appropriate given the nature and circumstances of the offense and the history and characteristics of Lowe.  The court ordered Lowe to be on supervised release for 15 years.  Lowe now appeals the court's inclusion of the vulnerable victim upward adjustment.

## II.

"We review de novo the district court's application of a U.S.S.G. § 3A1.1 enhancement, as it presents a mixed question of law and fact, but give due deference to the district court's determination that a victim was vulnerable, as [it] is a factual finding."  *United States v. Kapordelis*, 569 F.3d 1291, 1315–16 (11th Cir. 2009).

A two-level increase applies "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim."  U.S.S.G. § 3A1.1(b)(1).  A "vulnerable victim" is "a person (A) who is a victim of the offense of conviction

5

and any conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1, comment. (n.2).  Both a victim's circumstances and immutable characteristics can render a victim "vulnerable." *United States v. Bradley*, 644 F.3d 1213, 1288 (11th Cir. 2011).

In applying the vulnerable victim adjustment, we "focus[ ] chiefly on the conduct of the defendant . . . where the defendant selects the victim due to the victim's perceived vulnerability to the offense." *United States v. Frank*, 247 F.3d 1257, 1259–60 (11th Cir. 2001) (internal citation omitted).  Furthermore, the determination to apply the enhancement "must take into account the totality of the circumstances, including in some cases the victim's membership in a certain class or occupation." *Id.* at 1260.  Whether a victim qualifies as a vulnerable victim is a fact intensive inquiry that must be made on a case-by-case basis. *Id.*

### III.

The district court did not err in applying the vulnerable victim enhancement to Lowe's sentence.  The government expressly stated that age was not the only reason for the vulnerable victim enhancement.  Lowe was involved in the victim's prostitution, he had a sexual relationship with her, he was her sole means of transportation, and he knew that she was addicted to drugs and had no supervision

or support from her family.  Analyzing the totality of the circumstances, Lowe knew or should have known that the victim's drug addiction, lack of supervision, and dependence on him made her more susceptible to his criminal conduct. U.S.S.G. § 3A1.1, comment. (n.2); *Bradley*, 644 F.3d at 1288.  Accordingly, we affirm.

**AFFIRMED.**